**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

OHIO VALLEY ENVIRONMENTAL
COALITION, et al.,

                    Plaintiffs,

v.                                        CIVIL  ACTION  NO.  3:05-0784

UNITED STATES ARMY CORPS
OF ENGINEERS, et al.,

                    Defendants,

and

ARCOMA COAL COMPANY, et al.,

                    Intervenors Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the United States Army Corps of Engineers' motion for judgment on the pleadings, which seeks dismissal of Plaintiffs' complaint and motion for preliminary injunction under the doctrine of laches (Doc. 35).  For the following reasons, the motion is **DENIED**.

As the parties are well aware, this action involves Plaintiffs' challenge to the Corps' final agency decisions to issue individual Clean Water Act (CWA), 33 U.S.C. §§ 1251, *et seq.*, section 404, permits for three surface mines.[1]  Plaintiffs claim that the Corps has failed to comply with requirements under the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321, *et seq.*, and

---

[1]A separate action filed, challenging the issuance of the Laxare East mine permit, was consolidated into this case as well.  At the time that the Corps filed this motion, only three permits were at issue.

the CWA, and seek judicial review of the Corps' decisions under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706.

In its motion, the Corps argues that Plaintiffs' claims are barred by laches.  The doctrine of laches "bars a plaintiff from maintaining a suit if he unreasonably delays in filing a suit and as a result harms the defendant.  This defense requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121-22 (2002) (internal quotations marks and citations omitted).  Whether an action is barred by laches depends upon the  circumstances of each case, and such decision rests in the sound discretion of the trial court. *White v. Daniel*, 909 F.2d 99, 102 (4th Cir. 1990) (citations omitted).

To assist a trial court in making these determinations, the Fourth Circuit explained in *White* that a lack of diligence arises when there is an inexcusable or unreasonable delay in bringing an action.  *Id*.  "An inexcusable or unreasonable delay may occur only after the plaintiff discovers or with reasonable diligence could have discovered the facts giving rise to his cause of action." *Id*. (citations omitted).  A lack of diligence may be shown "either by proof that the action was not commenced within the period provided by the applicable statute of limitations or by facts otherwise indicating a lack of vigilance." *Id*. (citation omitted).

As to prejudice, the Fourth Circuit stated, that it may be shown when a defendant is disadvantaged "in asserting or establishing a claimed right or some other harm caused by detrimental reliance on the plaintiff's conduct." *Id*. (citation omitted).  If an inference of prejudice exists, a plaintiff must then have the opportunity "to excuse his apparent laggardness and to prove facts manifesting an absence of actual prejudice.  Clearly the greater the delay, the less the prejudice

-2-

required to show laches, and vice versa." *Id.* (internal quotation marks and citation omitted). Ultimately, it is the defendant who must prove prejudice, and he may do so either by inference or additional evidence. *Id.* (citation omitted).

Applying these principles to the facts of this case, the Court finds that the Corps has failed to establish unreasonable delay, and thus, the claims are not barred by laches. As an initial matter, this Court notes that Plaintiffs correctly state in their responsive memorandum that laches, as an equitable remedy, is generally disfavored in environmental cases. *See Arlington Coalition on Transp. v. Volpe*, 458 F.2d 1323, 1330 (4th Cir. 1972); *Mullin v. Skinner*, 756 F.Supp. 904, 915-916 (E.D.N.C. 1990).

Additionally, while the APA does not explicitly contain a limitations period, numerous courts, including the Fourth Circuit, have held that a complaint filed under the APA for review of an agency decision is a "civil action" within the meaning of 28 U.S.C. § 2401(a), which provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." *See Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180 (4th Cir. 1999)(finding the plaintiffs' NEPA claim subject to the six year statute of limitation under § 2401(a)); *see also Sierra Club v. Slater*, 120 F.3d 623, 630-631 (6th Cir. 1997); *Sierra Club v. Penfold*, 857 F.2d 1307, 1315 (9th Cir. 1988).

Although the complaint in this action was filed well within six years from the time the permits in question were issued, the opportunity remains for the Corps to prove other facts indicating unreasonable delay in filing the action. The Corps rests its argument of delay upon the time period between the date that the proposed permits were issued, and the date when Plaintiffs filed suit and sought injunctive relief. The Camp Branch mine permit was issued July 12, 2005, and Plaintiffs

filed suit on September 22, 2005, approximately two months later.  Plaintiffs amended their

complaint on November 2, 2005 to include the Black Castle mine permit, which was previously

issued on August 23, 2005, approximately two and a half months earlier.  On February 1, 2006,

Plaintiffs again amended their complaint to include the Republic No. 2 mine permit, which was

issued on December 22, 2005, approximately a month and a half later.  On February 1, 2006,

Plaintiffs also filed their motion for preliminary injunction requesting emergency injunctive relief

for all of these permits.

The Corps has not shown this Court that the time period between the issuance of the permits

to the filing of the action, ranging from 6 weeks to 10 weeks, was a "delay" resulting from the

Plaintiffs' lack of diligence.  The Corps argues that Plaintiffs and their counsel are sophisticated

groups that have previously challenged permits under Section 404 throughout West Virginia, and

had submitted comments to the Corps on these permits.  Thus, it argues, Plaintiffs had the ability

to make "timely" challenges and requests for emergency relief.  Although the Plaintiffs may have

experience in this type of litigation, that fact does not lead to the conclusion that Plaintiffs have the

ability or are required to read through the issued permits and the accompanying administrative

records, which this Court can attest are quite lengthy, within a short period after its issuance, in order

to determine if they have a cause of action.[2]  The Corps' argument suggests that a plaintiff

_____

[2]In their responsive pleading, Plaintiffs state that after the permits were issued, the Corps did not
provide timely public notice of their issuance.  According to Plaintiffs, the Corps' Huntington District
provides notice of permits on a quarterly basis, and not immediately upon their issuance.  Plaintiffs argue that
despite their efforts, they were unable to receive a copy from the Corps of each permit until multiple weeks
after they had been issued.  For example, Plaintiffs claim that although the Republic No. 2 mine permit was
issued on December 22, 2005, they had no knowledge of the issuance until January 11, 2006, and were unable
to receive a copy until January 18, 2006.  If this is the case, then the Corps' argument, that Plaintiffs motion
to amend their complaint to include this permit on February 1, 2006, was the result of unreasonable delay,
is even less convincing.

challenging a mining permit should file lawsuits immediately as the permits are issued, without

thoroughly examining the agency's records, the permits and other information before asserting a

failure to comply with the requirements of NEPA or the CWA.  This Court cannot find that a time

period of, at most, 6 to 10 weeks between the issuance of a permit and a lawsuit filed is unreasonable

or inexcusable under the facts of this case.

Further this Court does not find that the Plaintiffs unreasonably or inexcusably delayed in

filing their motion for preliminary injunction on February 1, 2006, seven months after the Camp

Branch mine was issued, five months after the Black Castle Mine was issued, and a month and a half

after the Republic No. 2 was issued.  From the time Plaintiffs filed its initial complaint until

February 1, 2006, the Corps issued the challenged permits on a staggered, yet repeated, basis.

Plaintiffs were continually reviewing the administrative record of each newly issued mine permit

to determine whether a cause of action exists as to that specific mine.  Once they determined that

not only does a cause of action exist as to each mine, but that each permit would cause immediate

and irreparable injury, the Plaintiffs filed a motion for preliminary injunction.  Again, the Corps has

not shown that Plaintiffs' delay was unreasonable in light of the facts of this case.[3]

To support its arguments, the Corps relies primarily upon *Stow v. United States*, 696 F.Supp.

857 (1988).  The plaintiffs in *Stow* sought judicial review under NEPA of an issued permit to

construct a dam and relocate a highway, claiming that the draft and final environmental impact

statements (EIS) were inadequate.  *Id.* at 863.  However, in this case, plaintiffs did not file their

---

[3]To the extent that the Corps' arguments relate to the filing of the action and preliminary injunction challenging the Laxare East mine permit as well, the Court finds that the Plaintiffs did not engage in inexcusable delay.  The permit was issued April 28, 2006, and the action was filed June 5, 2006.  For the same reasons that the Corps is not entitled to equitable relief under laches for the other three permits, the Corps is also not entitled to dismissal of the suit challenging the Laxare East mine permit under laches.

action until almost five years after the final EIS was issued, and seven months after the 404 permit was issued. *Id.* Throughout the approximately seven year permit process, the plaintiffs had continually objected at multiple levels to the very same deficiencies in the EIS as alleged in the suit. *Id.* at 860-861. In addition, the Court was concerned that the work under the permits were in advanced stages of construction at the time of the suit. *Id.* at 863 (work on the dam was 31% completed, and relocation work was 49% completed). Considering all of these circumstances, the court found that the plaintiffs' claims were barred by laches. *Id.*

The Court agrees with Plaintiffs that the present case is readily distinguishable from *Stow*. In this case, the Plaintiffs are challenging, in part, the decision by the Corps to issue the permits without requiring an EIS. While the Plaintiffs did submit comments during the public period, they did not have the opportunity, as the plaintiffs in *Stow*, to review a draft EIS to know the specific agency's actions, which they allege are illegal. After the issuance of the permits in this case, the Plaintiffs were able to examine, for largely the first time, the agency's environmental analyses and conclusions. It was then that Plaintiffs determined that the Corps violated NEPA and the CWA, and filed this lawsuit. The Plaintiffs did not wait multiple years, or even seven months, as did the plaintiffs in *Stow*. The Court is also not aware that the work under the permits at issue in this case is in advanced stages, and thus far, the parties have been able to agree upon some continued action under the permits.[4] The Court concludes that the circumstances present in *Stow* for that court to determine that the plaintiffs' claims were barred by laches are not present in this case.

_____

[4]In addition, the Court notes that the Corps, itself, suspended the permits at issue and voluntarily remanded the permits for further review. During that period, the coal companies were obviously unable to conduct any activity under the permits. So, the Corps' actions, and not just the challenge by the Plaintiffs, are also affecting the advancement of work under the permits.

The Corps has failed to provide proof of an unreasonable or inexcusable delay on behalf of the Plaintiffs in filing this action challenging the permits at issue or in seeking injunctive relief. Because the Corps has not shown unreasonable delay, the doctrine of laches is inapplicable.[5] Accordingly, the Corps' motion for judgment on the pleadings seeking dismissal of Plaintiffs' complaint and motion for preliminary injunction under the doctrine of laches is **DENIED** (Doc. 35).

The Court **DIRECTS** the Clerk to send a copy of this Written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:        August 3, 2006

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[5]Although this Court need not continue the analysis to determine whether the Corps' suffered prejudice, a cursory review of the Corps' argument reveals it did not. Arguments as to the integrity of the review process and management issues being subject to the "whim of citizen plaintiffs" who challenge permits months after issuance are unpersuasive, especially since the Corps voluntarily remanded the permits at issue for further review.