IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, et al.,

           Plaintiffs,

v.                                      CIVIL ACTION NOs. 3:05-0784
                                                                     3:06-0438

UNITED STATES ARMY CORPS
OF ENGINEERS, et al.,

           Defendants.

v.

INDEPENDENCE COAL COMPANY, et. al.,

           Intervenor-Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the U.S. Army Corps of Engineers' ("the Corps") Motion to Extend Stay of Proceedings Regarding the Mingo Logan Coal Company's Spruce No. 1 Permit for an Additional Thirty Days (Doc. 463). For the reasons set forth below, the motion is **GRANTED.**

**Background**

After nearly a decade of coordination with the coal company and the U.S. Environmental Protection Agency ("EPA"), on January 22, 2007, the Corps issued individual Clean Water Act Permit No. 199800436-3 to the Mingo Logan Coal Company ("Mingo Logan"), authorizing the discharge of fill material into waters of the United States associated with the Spruce No. 1 mine located in Logan County, West Virginia ("Spruce No. 1 Permit"). *See* Doc. 464-1, *U.S. Corps of*

*Engineers' Letter to U.S. EPA,* September 30, 2009 (hereinafter "*Corps' September 30 Letter*"). The project, as permitted, "encompasses approximately 2,278 acres with six valley fills and associated sediment control structures directly impacting 10,630 linear feet of ephemeral stream channels, 32,491 linear feet of intermittent stream channels, 825 linear feet of perennial channels and 0.12 acres of wetland with tributaries to Spruce Fork of the Little Coal River," Doc. 459, *U.S. EPA's Letter to U.S. Corps of Engineers*, September 3, 2009 (hereinafter "*EPA's September 3 Letter*"), and Mingo Logan has been conducting mining operations, in an agreed upon manner, under the permit since early 2007. Mingo Logan is currently in compliance with all existing conditions of the Permit and the Corps has determined that "no additional evaluation of the project's effects on the environment are warranted." Doc. 464-1, *Corps' September 30 Letter* at 4.

Despite Mingo Logan's compliance, and in spite of the Corps' determination that the Permit has undergone sufficient environmental review, however, the Spruce No. 1 Permit remains the subject of controversy. First, the Permit lies at the heart of this litigation, initiated by Plaintiffs shortly after issuance, on January 30, 2007. Additionally, the Permit is now the subject of a formal review pursuant to EPA's discretionary authority under § 404(c) of the Clean Water Act ("CWA"), which allows the agency to prohibit, deny, restrict, or withdraw the use of any defined area for specification as a disposal site.[1,2] *See* 33 U.S.C. § 1344(c).

---

[1] Pursuant to § 404(b) of the CWA, the "specification" of a disposal site refers to the process by which each § 404 disposal site is specified by a permit. Specification is conducted "by the Secretary [] through the application of guidelines developed by the Administrator, in conjunction with the Secretary." 33 U.S.C. § 1344(b). In other words, the specification is the specific disposal of fill authorized by a particular permit.

[2] In a letter to the Corps dated October 16, 2009, EPA formally notified the Corps of its intention to subject the Spruce No. 1 Permit to review under § 404(c) and to issue a public notice of a proposed determination to prohibit, deny, restrict, or withdraw the specification within 15

The litigation before this Court is currently subject to a 30-stay entered on September 15, 2009 (Doc. 461). The Corps now moves the Court to extend this stay for an additional 30 days, until November 4, 2009. The Corps initially moved to extend the stay "in order to provide the [EPA] with an opportunity to consider whether to exercise its authority under § 404(c) of the [CWA]." Doc. 463, *U.S.'s Mot. To Extend Stay of Proceedings*. However, now that EPA has initiated the administrative process to exercise its § 404(c) authority, the Corps seeks the extension to "allow for the necessary coordination between EPA and the Corps and Mingo Logan," which is required under the regulations. Doc. 465, *U.S.'s Reply to Mingo Logan's Resp. to U.S.'s Mot. To Extend Stay*. The Court **FINDS** the Corps' request reasonable and **GRANTS** the motion.

### EPA's Authority Under § 404(c) of the CWA

Pursuant to § 404(c) of the CWA, EPA "is authorized to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever [the Administrator] determines ... that the discharge of such materials into such area will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas ... wildlife, or recreational areas." 33 U.S.C. § 1344(c). The statute provides certain procedures the Administrator must follow when making such a determination; procedures which are elaborated upon in the agency's regulations. *See id.* ("Before making such determination, the Administrator shall consult with the Secretary. The Administrator shall set forth in writing and make public his findings and his reasons for making any determination under this subsection."); *see generally* 40 C.F.R. Part 231; 40 C.F.R. § 231.3(a) ("If the Regional Administrator has reason to believe ... that

---

days of the letter. *See* Doc. 465-1, U.S. EPA's Letter to U.S. Corps of Engineers, October 16, 2009 (hereinafter "*EPA's October 16 Letter*"); *see also* 40 C.F.R. § 231.3(a)(2).

an 'unacceptable adverse effect' could result from the specification ... (1) [He] will notify the District Engineer or the state ... in writing that the Regional Administrator intends to issue a public notice of a proposed determination."); 40 C.F.R. § 231.3(a)(2) ("If within 15 days of receipt of the Regional Administrator's notice under paragraph (a)(1) ... it has not been demonstrated to the satisfaction of the Regional Administrator that no unacceptable adverse effect(s) will occur or the District Engineer or state does not notify the Regional Administrator of his intent to take corrective action to prevent an unacceptable adverse effect satisfactory to the Regional Administrator, the Regional Administrator shall publish notice of a proposed determination."). Regardless of the imposition of specific procedures, however, the statute and the regulations leave the final determination with respect to specification at the discretion of EPA. 33 U.S.C. § 1344(c); 40 C.F.R. § 231.1(a). This determination must be made in light of the 404(b)(1) Guidelines and the purposes of the CWA. *See* 33 U.S.C. § 1344(b); 40 C.F.R. § 231.1(a) ("In making this determination, the Administrator will take into account all information available to him, including any written determination of compliance with the section 404(b)(1) guidelines made in 40 C.F.R. Part 230.").

**Standard of Review**

The Court's power to stay an action derives from its inherent power to control its own docket. *See, e.g., United States v. Georgia Pacific, Corp.*, 562 F.2d 294, 296 (4th Cir. 1977). This discretionary power is well-recognized. *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). Nonetheless, it is not without limitation. *Id.* Instead, the "proper use of this authority calls for an exercise of judgment which must weigh competing interests and maintain an even balance." *Id.* (internal quotations and citations omitted). Therefore, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm against whom it

is operative." *Id.*

**Analysis**

Mingo Logan opposes the extension – as it opposed the original stay – on the basis that: (1) the stay will "cause needless delay to Mingo Logan's right to have its case decided by this Court," Doc. 464, *Mingo Logan's Resp. to U.S.'s Mot. To Extend Stay*; Doc. 460, *Mingo Logan's Resp. to U.S.'s Mot. To Stay Proceedings* (arguing Mingo Logan is entitled to a prompt resolution of the case); and (2) the Corps' contention that the pertinent federal agency might use its regulatory authority to reevaluate and/or deny, restrict, suspend, or withdraw the Spruce No. 1 Permit is speculative.[3] Doc. 464, *Mingo Logan's Resp. to U.S.'s Mot. To Extend Stay* at 3 & 4 (arguing that the likelihood that EPA will invoke its § 404(c) authority is a "mere possibility," given the fact that it has "never attempted to do so any time since the Corps first undertook to issue a permit for [the Spruce No. 1] mine in 1999."); Doc. 460, *Mingo Logan's Resp. to U.S.'s Mot. To Stay Proceedings* at 3 ("Speculation that the Corps might use its regulatory authority to re-visit the Spruce Permit is just that–speculation.").

Although the Court is sympathetic to Mingo Logan's frustration regarding delay, the company's contention that it is speculative whether EPA might exercise its authority under § 404(c) no longer stands. EPA formally initiated the administrative process to exercise its § 404(c) authority with respect to the Spruce No. 1 Permit in its October 16, 2009, letter to the Corps. In the letter, EPA explains that "Section 404(c) authorizes EPA to prohibit, deny or restrict use of any defined area for specification as a disposal site," Doc. 465-1, *EPA's October 16 Letter* at 5, and that "while

---

[3]According to the Corps, Plaintiffs do not oppose the extension, on the condition that Plaintiffs' date for response to Mingo Logan's motion for summary judgment is subject to the stay. *See* Doc. 463, *U.S.'s Mot. to Extend Stay*, ¶ 10.

the permit contains some provisions designed to address some of EPA's concerns, further modifications to the permit are necessary if this project is to meet fully the requirements of the [CWA] and the agencies' regulations." *Id.* Further, as required by the regulations, EPA invites the Corps and Mingo Logan to meet with it "during the next 15 days to discuss options for further reducing adverse environmental impacts associated with the proposed project," *id.* at 2; *see also* 40 C.F.R. § 231.3(a)(2); and it indicates that "[it] stand[s] ready to work with [the Corps] and [its] staff to modify the permit to address [EPA's] concerns," and "encourage[s] [the Corps] to contact [EPA] to schedule a discussion as soon as possible." *Id.*

Therefore, through its October 16, 2009, letter, EPA makes it clear that it finds flaw with and intends to require modifications be made to the Spruce No. 1 Permit. Many of the flaws EPA identifies relate to issues raised by Plaintiffs in this litigation; addressed by the Fourth Circuit in *Ohio Valley Environmental Coalition v. Aracoma Coal Co.*, 556 F.3d 177 (4th Cir. 2009); and argued by Mingo Logan in support of its motion for summary judgment. *See* Doc. 445, *Memo. in Support of Mingo Logan's Mot. For Summary Judgment.* Thus, it is reasonable to assume that EPA's § 404(c) process, including its consultations with the Corps and Mingo Logan, will have bearing on the instant litigation. In light of this fact, and in light of the 15-day deadline set by the regulations concerning if and when an Administrator undertaking a § 404(c) review must issue public notice of a proposed determination, *see* 40 C.F.R. § 231.3(a)(2), the Court **FINDS** the Corps' request to extend the existing stay reasonable. The Corps' motion is therefore **GRANTED** and all proceedings regarding the Mingo Logan Spruce No. 1 Permit are **STAYED** until **November 4, 2009**.

In conformity with the original stay, this extension shall not affect Mingo Logan's ability to conduct mining operations pursuant to the parties' earlier agreements. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: October 21, 2009

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE