IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, COAL RIVER MOUNTAIN
WATCH, and WEST VIRGINIA
HIGHLANDS CONSERVANCY,

    Plaintiffs,

v.                                                    Civil Action No. 3:05-cv-0784

UNITED STATES ARMY CORPS OF
ENGINEERS; LIEUTENANT GENERAL
CARL A. STROCK, Commander and Chief
of Engineers, U.S. Army Corps of Engineers;
COLONEL WILLIAM E. BULEN, District
Engineer, U.S. Army Corps of Engineers,
Huntington District,

    Defendants,

WEST VIRGINIA COAL ASSOCIATION,

    Intervenor-Defendant,

ARACOMA COAL COMPANY, ELK RUN
COAL COMPANY, ALEX ENERGY, INC.,
INDEPENDENCE COAL COMPANY,
MINGO LOGAN COAL COMPANY, INC.,
COAL-MAC, INC., and FRASURE CREEK
MINING, LLC,

    Permittee Intervenor-Defendants.

**MINGO LOGAN COAL COMPANY'S RESPONSE IN OPPOSITION
TO CORPS OF ENGINEERS' REQUEST FOR INDEFINITE STAY**

{C1714909.1}

## I. INTRODUCTION

Enough! The government has previously sought and obtained nine (9) stays or extensions of time to respond to Mingo Logan's still outstanding motion for summary judgment.[1] That motion was filed on July 16, 2009. (Doc. 444). It asks only that the Court decide the issues pleaded in <u>this</u> action as to a permit issued in January 2007. The summary judgment motion was filed in the wake of the Fourth Circuit's ruling in *OVEC v. Aracoma Coal Company,* 556 F.3d 177 (4th Cir. 2009). That ruling rejected the same claims that OVEC advances against the Corps of Engineers ("Corps") with respect to the Spruce No. 1 Permit. While the Corps has to date vigorously defended its permit decisions, other elements within the government now seek an indefinite stay of this case pending the outcome of USEPA's Clean Water Act § 404(c) (33 U.S.C. § 1344(c)) administrative action.

USEPA's 404(c) issues, though, are not before this Court. Only the allegations of OVEC's pending complaint are properly before this Court. And they challenge only the issuance by the Corps of the Spruce No. 1 Permit—on grounds that the Fourth Circuit has already rejected. This Court should deny the government's motion for a further, indefinite and unfair delay, and rule on Mingo Logan's motion for summary judgment. To do otherwise will contravene the Court's fundamental duty to decide cases based on the pleadings before it. No citizen should have to endure the pendency of an action without merit. Fed. R. Civ. P. 1 (stating that the rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action"); *Heiser v. Woodruff,* 327 U.S. 726, 732-33, (1946) (noting "the generally recognized public policy that there must be some end to litigation"); *Landis v. North*

---

[1] The Corps' requests are reflected in the following documents: Doc. Nos. 448 (7/29/09); 454 (8/6/09); 457 (8/21/09); 459 (9/14/09); 463 (10/5/09); 467 (11/4/09); 469 (12/4/09); 472 (1/4/10) and 479 (3/5/10). The Court's orders granting the requests appear in Doc. Nos. 449 (7/30/09); 456 (8/10/09); 458 (8/22/09); 461 (9/15/09); 466 (10/21/09); 468 (11/5/09); 471 (12/7/09); 473 (1/5/10); 477 (3/8/10) and 480 (3/18/10).

*American Co.*, 299 U.S. 248, 255, (1936) ("discretion [is] abused by a stay of indefinite duration in the absence of a pressing need."); *see also In re Nicholas' Estate*, 107 S.E. 2d 53, 55 (W.Va. 1959) ("There must at some time be an end to controversies. Courts are for the purpose of furnishing a speedy end to litigation and not as a forum for endless contentions.") (quoting *Royall v. Peters*, 180 Va. 178, 21 S.E. 782, 787 (Va. 1942)).

Moreover, the government's motion does not advance the Corps' interests. Rather, it openly advances the interests of USEPA, which is not a party to this action, in an effort to forestall further mining by Mingo Logan under the Spruce No. 1 Permit. Indeed, as Mingo Logan has pointed out to this court previously, the Corps has consistently and substantively defended the Spruce No. 1 Permit since its issuance, including the Corps' September 30, 2010 letter to USEPA declining USEPA's request that the Corps suspend the permit. *See* Exhibit A to Mingo Logan's Response to the United States' Motion to Extend Stay of Proceedings filed 10/7/09, Doc. No. 464 and Order of 10/21/09, Doc. No. 466.) By declining to apply the Fourth Circuit's dispositive ruling to Mingo Logan's motion, this Court is giving USEPA what it wants without requiring that USEPA comply with the substantial statutory or judicial standards for obtaining such interim relief. *See* 40 C.F.R. § 231.7 (authorizing USEPA to request that the Corps suspend the permit under certain conditions and referencing emergency powers under CWA § 504) & 33 U.S.C. § 1364(a) [CWA § 504] (authorizing USEPA to bring suit "to immediately restrain" persons contributing to pollution under certain circumstances). Under controlling precedent, this Court cannot defer to USEPA's concerns, and instead must deny the motion.

## II.   DISCUSSION

A party seeking a stay "must state a clear countervailing interest to abridge a party's right to litigation." *CTF Hotels, Inc. v. Marriott International, Inc.,* 381 F.3d 131, 139 (3rd Cir. 2004). In the Fourth Circuit, the requesting party must "make out a clear case of

hardship or inequity in being required to go forward <u>if there is even a fair possibility</u> that the stay it seeks will work damage to someone else." *Williford v. Armstrong World Industries, Inc.,* 715 F.2d 124, 127 (4th Cir. 1983).  Previously, the Court has not required the Corps to make a case of hardship, and has relied on the presumed ability of Mingo Logan to work within limited portions of the Spruce No. 1 site as evidence that Mingo Logan will suffer no harm.[2]  Mingo Logan, however, will suffer very real harm if the requested stay is granted.

### A.     Harm to Mingo Logan.

The harm to Mingo Logan will take one of two forms.  First, if a stay is granted and the Court does not rule on the motion for summary judgment, then Mingo Logan's efforts to expand its mining into new watersheds will remain subject to its "notice" agreement with OVEC and this Court's continuing oversight authority.[3]  Mingo Logan made its "notice" commitment to OVEC as a compromise, expecting only a reasonable delay in the resolution of the instant case. Further delays in the disposition of the case will harm Mingo Logan by continuing to subject it to the twenty-day notice commitment and the expense and risk associated with a likely preliminary injunction motion by OVEC.  Mingo Logan's initial belief in the orderly processes of this Court, which led to its willingness to enter its agreement with OVEC, should not now be used against it by requiring Mingo Logan to give notice and perhaps trigger a distracting dispute under an agreement which should have run its course because this action should no longer remain pending.

---

[2] *See* Order of Sept. 15, 2009, Doc. No. 461, p. 2 (noting that Mingo Logan has continued to mine in a restricted area pursuant to agreement to limit operations in face of motion for temporary restraining order); Order of March 18, 2010, Doc. No. 480, p. 3 (finding no harm as result of requested three-week stay "because Mingo Logan may continue to conduct limited mining operations.").

[3] To avoid the expense and delay associated with a hearing on a preliminary injunction request, in January 2007, Mingo Logan "agreed [with OVEC] temporarily to limit [its] activities."  *See* Order of 2/1/07 (Doc. No. 257). Mingo Logan agreed, pending the resolution of OVEC's claims against the Spruce No. 1 Permit, it would restrict the area of its operations unless it first gave OVEC twenty days notice of its intention to move into new areas so that OVEC could seek preliminary injunctive relief.  *See id.*

{C1714909.1}                                                     4

Second, unless Mingo Logan subjects itself to the expense and delay associated with providing prior notice and a likely preliminary injunction hearing, it cannot use its issued permit to expand into new watersheds. The government's own motion for stay proves the point. In its motion, the government's counsel argues that if this Court was to grant Mingo Logan's motion for summary judgment, then "the mining operation that EPA is challenging would go forward." Corps' Mem. in Support of Motion to Extend Stay, Doc. No. 482, p. 4. That is, the government presumes that the effect of a stay is to restrict Mingo Logan's mining to a limited area and that further mining will not occur in the event of a stay. Not being able to use its three year old permit as planned constitutes harm to Mingo Logan.

After spending $7.7 million on initial infrastructure development at the Spruce No. 1 Mine, Mingo Logan was stopped by this action from continuing its operations beyond the limited area in which it had begun mining. Contrary to the Corps' contention, the continued delays in deciding this case causes real economic harm to Arch and its current and future employees. Because of the stay in this Court, 90 percent of the reserves at Spruce No. 1 remain in the ground. Mingo Logan does not know when it will be able to mine those reserves, and without knowing when it will be able to mine, it is economically impractical for Mingo Logan to invest in additional infrastructure, equipment and personnel that would allow Mingo Logan to mine the coal from Spruce No. 1 more efficiently and at a lower cost per ton. Every lost day in building the infrastructure and ordering equipment to expand its operations, delays by a corresponding day Mingo Logan's ability to begin mining the remaining Spruce No. 1 reserves, reducing per-ton coal costs, hiring new employees and being able to mine and sell additional coal into a robust market.

Currently, Mingo Logan has contracts to supply steam coal to customers. It needs to increase production at Spruce No. 1 for this purpose, but to do so must construct ponds and roads in new watersheds. Absent expansion of the Spruce No. 1 mining areas, Mingo Logan must use coal from its underground mine at Mountain Laurel, which is a higher quality and higher priced metallurgical coal, to fill contracts for steam coal, instead of using lower grade steam coal from the Spruce No. 1 reserves to fill those existing contracts. Although metallurgical coal prices have been depressed in the recent past, those prices are starting to increase and many market analysts predict sustained price increases. If Mingo Logan cannot expand the Spruce No. 1 Mine to "free up" the Mountain Laurel Mine production for sale as metallurgical coal, it will almost certainly lose substantial revenues and profits. That risk meets the test in *Williford* for shifting to the Corps the burden to show substantial hardship. *Williford,* 715 F.2d at 127 (when party affected by possible stay shows just "fair possibility" of harm, proponent of stay must make out "clear case of hardship or inequity.").

### B. Lack of Harm to the Corps.

In contrast, the Corps has not and cannot meet the test to show substantial hardship. Its interest in this case is clear—it is for this Court to affirm the permit that the Corps issued. It issued a permit after the longest and most detailed review in the history of its mining programs. It has repeatedly rebuffed requests by USEPA to suspend or revoke the permit,[4] and has vigorously sought in this very case to defend other similar permits. Yet, the government's counsel now urges the Court to stay further proceedings that would likely result in a judicial

---

[4] See Doc. Nos. 459 (USEPA's September 3, 2009 Letter asking Corps to suspend, revoke or modify permit) and 463-1 (Corps' September 30, 2009 Letter rejecting USEPA's request).

{C1714909.1}                                      6

affirmation of the Spruce permit. It does so, however, on behalf of USEPA, a non-party to this case with interests clearly adverse to those of the Corps.[5]

The government does not advance a single argument that the Corps will suffer any hardship absent a stay. Rather, it now openly advances the interests of USEPA, claiming that should this Court grant the outstanding summary judgment motion, then ". . . the mining operation that EPA is challenging would go forward, and any determination by EPA to prohibit or restrict . . . the operation would be moot." Doc. No. 482, p. 4. The government does not explain how USEPA's interests warrant a stay under *Williford*, which requires that "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." 715 F.2d at 127.

USEPA is not a party to this case, and its interests ought to be given no consideration unless it chooses to intervene to advance them. *E.g., Harris County Wrecker Owners for Equal Opportunity v. City of Houston*, 943 F. Supp. 711, 717 (S.D. Tex. 1996) (individual who had neither been joined as party nor intervened had no standing to file pleadings), abrogated on other grounds by *Stucky v. City of Antonio*, 260 F.3d 424 (5th Cir. 2001); *In re Performance Interconnect Corp*, No. 06-34482-BJH-7, 2007 WL 2088281, at *2 (Bankr. N.D. Tex. 2007) (parties are permitted to file pleadings and otherwise be heard in a civil action, but a non-party cannot either file pleadings or be heard). USEPA had the opportunity to block the issuance of the Spruce No. 1 Permit at the outset,[6] and elected not to do so. If it now

---

[5] Section 404 expressly contemplates that the interests of the Corps and USEPA may be adverse. Compare 33 U.S.C. § 1344(a) (granting Corps' right to issue permits) with § 1344(c) (granting USEPA authority to "prohibit the specifications . . . of any defined area as a disposal site.").

[6] See 40 C.F.R. § 231.3 (where USEPA notifies Corps that it is considering use of § 404(c) authority for pending application, Corps, in accordance with 33 C.F.R. § 325.8, "shall not issue the permit…")

desires to invoke its emergency authority in CWA § 504(a) (33 U.S.C. § 1364(a)), then it should do so, straightforwardly and in Court, as required by Congress.

### C.     Open-Ended Stay is Abuse of Discretion.

The Court has previously ruled that the power to grant a stay derives from its inherent power to control its docket. Order of Oct. 21, 2009, Doc. 466, p. 4. Its sole basis for granting prior contested extensions was a concern with judicial efficacy. *Id.*, p. 6. (". . . it is reasonable to assume that EPA's § 404(c) process, including its consultations with the Corps and Mingo Logan, will have bearing on the instant litigation."). All consultations between Mingo Logan and USEPA, however, are over. USEPA has refused to engage in any meaningful discussions with Mingo Logan, and its requests that the Corps revoke the permit have been soundly rejected. Thus, the only action remaining that could affect this litigation is a § 404(c) proceeding itself.

While the § 404(c) proceeding could moot this case entirely, "judicial efficacy does not, by itself, allow a federal court to refuse to exercise its jurisdiction in favor of proceeding in an alternative forum"—the proponent of the stay still carries a substantial burden. *CTF Hotels*, 381 F.3d at 139. Nor is an indefinite stay of the type USEPA seeks ever appropriate.

USEPA has established no schedule for completing a § 404(c) proceeding. While the Corps' motion represents that the "administrative process will take several months," (Doc. 482, p. 4) the process belongs to USEPA rather than the Corps. USEPA's regulations do not, however, purport to create any enforceable time constraints on the process. *See* 40 C.F.R. § 231.8 (all deadlines extendable by USEPA upon "showing of good cause."). The process will certainly take much longer than "several" months. The public notice of USEPA's "Proposed Determination" will alone give the public (sixty) 60 days to file comments once USEPA

publishes it in the Federal Register. *See* Doc. 481-1, p. 2. According to USEPA's website, the twelve prior § 404(c) actions have taken from six to eighteen months. The average is over eleven months—almost a year. *See* http://www.epa.gov/owow/wetlands/pdf/404c.pdf. Nor is there a neutral party, such as a court, to establish something akin to a case management order.

An indefinite stay pending the result of such an open-ended process overseen by an agency that has taken over three years since the Corps issued the permit just to determine if it desired to start the process is precisely the type of "immoderate" stay courts have uniformly rejected as an abuse of discretion. *E.g., Ortega Trujillo v. Conover & Co. Communications, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000) (stay of defamation action against bank pending resolution of bank's case in foreign court alleging plaintiff misappropriated funds was indefinite and therefore "immoderate" and abuse of discretion); *Parents Involved in Community Schools v. Seattle School District No. 1,* 498 F.3d 1159 (9th Cir. 2007) ("[a] stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time"); *BP Chemicals Ltd. v. Jiangsu Sopo Corp.*, 429 F. Supp. 2d 1179, 1184 (E.D. Mo. 2006) (no stay warranted on grounds of judicial economy because of parallel proceeding in China since no decision forthcoming in other action).

Nor can the indefinite duration of the stay requested be cured by an order of this Court requiring the United States to submit status reports on the § 404(c) process. *Ortega Trujillo*, 221 F.3d at 1264. Indeed, no party to <u>this</u> case will have the ability to provide the Court with meaningful insight as to the progress of the § 404(c) action because the § 404(c) process is overseen by USEPA, which is not a party to this proceeding.

### III. CONCLUSION

USEPA participated in a lengthy permit review process that took the better part of a decade. It did not object when the Corps issued the permit in January 2007. It did not object

{C1714909.1}    9

when Mingo Logan started to mine. It has not gathered or requested any information from Mingo Logan to determine whether any impacts have resulted from over three years of mining that have already occurred under the Spruce No. 1 Permit. It has not rebutted the Corps' determination that Mingo Logan's operations have been conducted in compliance with the § 404 permit. *See* Corps' Letter of 9/30/09, p. 4 (Doc. 463-1, p. 4).

USEPA simply has not sought to raise its alleged concerns in a timely manner before this Court or elsewhere. Rather, it has made a belated <u>political</u> decision. So be it. But, that belated decision by a non-party provides no basis to stay indefinitely a resolution of this unrelated case based on allegations not before this Court by an agency not before this Court and based on the highly questionable legal premise that USEPA has the legal authority to revoke a permit issued over three years ago. Mingo Logan will challenge this legal premise in another court in which USEPA's concerns, if legally and factually legitimate, can be adjudicated.

Mingo Logan faces more than a "fair possibility" of harm from a stay, and the Corps points to no hardship. Coupled with the open-ended notice of the request, the Corps' motion runs afoul of the criteria established in *Williford*, and must be denied.

        Respectfully submitted,

        MINGO LOGAN COAL COMPANY, INC.
        By Counsel

/s/ *Robert G. McLusky*
ROBERT G. McLUSKY (WVBN 2489)
JAMES R. SNYDER (WVBN 3504)
BLAIR M. GARDNER (WVBN 8807)
JACKSON KELLY, PLLC
1600 Laidley Tower
Post Office Box 553
Charleston, West Virginia 25322
*Counsel for Mingo Logan Coal Company, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**OHIO VALLEY ENVIRONMENTAL COALITION, COAL RIVER MOUNTAIN WATCH, and WEST VIRGINIA HIGHLANDS CONSERVANCY,**

      **Plaintiffs,**

v.   Civil Action No. 3:05-cv-0784

**UNITED STATES ARMY CORPS OF ENGINEERS; LIEUTENANT GENERAL CARL A. STROCK, Commander and Chief of Engineers, U.S. Army Corps of Engineers; COLONEL WILLIAM E. BULEN, District Engineer, U.S. Army Corps of Engineers, Huntington District,**

      **Defendants,**

**WEST VIRGINIA COAL ASSOCIATION,**

      **Intervenor-Defendant,**

**ARACOMA COAL COMPANY, ELK RUN COAL COMPANY, ALEX ENERGY, INC., INDEPENDENCE COAL COMPANY, MINGO LOGAN COAL COMPANY, INC., COAL-MAC, INC., and FRASURE CREEK MINING, LLC,**

      **Permittee Intervenor-Defendants.**

## CERTIFICATE OF SERVICE

      I, Robert G. McLusky, do hereby certify that on April 2, 2010, I electronically filed the foregoing MINGO LOGAN COAL COMPANY'S RESPONSE IN OPPOSITION TO CORPS OF ENGINEERS' REQUEST FOR INDEFINITE STAY with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Terry R. Sammons | Nicholas S. Preservati |
| Sammons Law Offices | Preservati Law Offices |
| P.O. Box 1747 | P.O. Box 1431 |
| Gilbert , WV 25621 | Charleston , WV 25325 |

{C1714909.1}

| | |
|---|---|
| Allyn G. Turner<br>James S. Crockett, Jr.<br>Andrew B. McCallister<br>Kelly Beth Griffith<br>Spilman Thomas & Battle, PLLC<br>P.O. Box 273<br>Charleston, West Virginia 25321-0273 | Cynthia J. Morris<br>Steven E. Rusak<br>U.S. Department of Justice<br>Environment & Natural Resources Division<br>Environmental Defense Section<br>P.O. Box 23986<br>Washington, DC  20026-3986 |
| Stephen E. Roady<br>Jennifer C. Chavez<br>Elena Saxonhouse<br>Earthjustice<br>1625 Massachusetts Ave., NW, Suite 702<br>Washington, DC  20036 | Ruth Ann Storey<br>U.S. Department of Justice<br>Environment & Natural Resources Division<br>General Litigation Section<br>P.O. Box 663<br>Washington, DC  20044-0663 |
| Joseph M. Lovett<br>Appalachian Center for the Economy<br>    and the Environment<br>P.O. Box 507<br>Lewisburg, WV  24901 | Ann D. Navaro<br>U.S. Army Corps of Engineers<br>Great Lakes and Ohio River Division<br>P.O. Box 1159<br>Cincinnati, OH  452021 |
| Stephen M. Horn<br>U.S. Attorney's Office<br>P.O. Box 1713<br>Charleston, WV  25326-1713 | James M. Hecker<br>Public Justice<br>1825 K Street, NW, Suite 200<br>Washington, DC 20006 |
| Diana Leigh Johnson<br>George A. Patterson, III<br>Joseph M. Dawley<br>Leonard B. Knee<br>Bowles Rice McDavid Graff & Love<br>P.O. Box 1386<br>Charleston, WV 25325-1386 | Edward P. Tiffey<br>P.O. Box 3785<br>Charleston , WV 25337-3785 |

                                                                                                        */s/ Robert G. McLusky*
                                                                                                             ROBERT G. McLUSKY