# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, et al.,

        Plaintiffs,

v.                                          CIVIL ACTION NOs. 3:05-0784
                                                                             3:06-0438

UNITED STATES ARMY CORPS
OF ENGINEERS, et al.,

        Defendants.

v.

INDEPENDENCE COAL COMPANY, et. al.,

        Intervenor-Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the U.S. Army Corps of Engineers' ("the Corps") Motion to Extend the Stay of Proceedings Regarding the Mingo Logan Coal Company's Spruce No. 1 Permit Pending Completion of Administrative Proceedings by the Environmental Protection Agency (Doc. 481) and the Mingo Logan Coal Company's ("Mingo Logan") Motion to Supplement Response in Opposition to Corps of Engineers' Request for Indefinite Stay with Supporting Affidavit (Doc. 485). For the reasons set forth below, both motions are **GRANTED.**

**Background**

This action pertains to the validity of the Corps' issuance of individual Clean Water Act ("CWA") Permit No. 199800436-3 to Mingo Logan, for the discharge of fill material into waters of the United States in association with the Spruce No. 1 mine located in Logan County, West Virginia ("Spruce No. 1 Permit"). *See Corps' September 30, 2009, Letter* (Doc. 464-1). The Spruce No. 1 Permit was issued, on January 22, 2007, after nearly a decade of Corps coordination with the coal company and the U.S. Environmental Protection Agency ("EPA"). *Id.* Almost immediately following issuance, on January 30, 2007, Plaintiffs filed the instant lawsuit, challenging the issuance of the Spruce No. 1 Permit and seeking to enjoin operations under it. *See Pls.' Mot. for Leave to File Fourth Suppl. Compl.* (Doc. 250); *Pls.' Mot. for TRO* (Doc. 252). "To avoid the expense and delay associated with a hearing on a preliminary injunction request, in January 2007, Mingo Logan agreed with [Plaintiffs] temporarily to limit its activities." *Mingo Logan's Resp. in Opp'n,* (Doc. 483), 4 (internal brackets and quotations omitted). The parties' agreement was acknowledged, by Order of this Court, on February 1, 2007. *See* Doc. 257. According to the compromise, in exchange for Plaintiffs' agreement to withdraw their motion for a temporary restraining order, Mingo Logan consented to: (1) limit its mining activities to a specified area, and (2) provide Plaintiffs 20 days notice before expanding mining operations outside this specified area. *Id.* Mingo Logan has been operating under the Spruce No. 1 Permit, in the manner specified in the January 2007 agreement, since that time.

On July 16, 2009, Mingo Logan filed a motion for summary judgment in this case. *See* Doc. 444. The motion relies, in large part, upon the Fourth Circuit's decision in *Ohio Valley Environmental Coalition, Inc. v. Aracoma Coal Co.*, 556 F.3d 177 (4th Cir. 2009), where, on

February 17, 2009, the circuit court overturned a decision by this Court. In *Aracoma*, the Fourth Circuit found that the Corps was entitled to substantial deference when issuing permits pursuant to § 404 of the CWA and upheld four permits previously struck down by this Court. *Id.* Since the filing of Mingo Logan's motion for summary judgment, on July 16, 2009, the United States has sought and received nine stays or extensions of time to respond to Mingo Logan's motion. *See U.S.'s Mots. & Corresponding Orders* (Docs. 448/449, 454/456, 457/458, 459/461, 463/466, 467/468, 469/471, 472/473, and 474/480). Five of these requests for stays or extensions were unopposed, *see* Docs. 454, 457, 467, 469, and 472, and four were granted over Mingo Logan's objection, or before Mingo Logan was provided the opportunity to object. *See* Docs. 448/449, 459/461, 463/466 and 474/480. The United States now moves to extend the stay of this action, pending the completion of EPA's administrative review of the Spruce No. 1 Permit, pursuant to § 404(c) of the CWA. Plaintiffs do not oppose the motion, however, Mingo Logan has filed a response in opposition. *See* Doc. 483.

Pursuant to § 404(c) of the CWA, the EPA "is authorized to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever [the Administrator] determines ... that the discharge of such materials into such area will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas ... wildlife, or recreational areas." 33 U.S.C. § 1344(c). The EPA's § 404(c) review of the Spruce No. 1 Permit was formally initiated, on October 16, 2009, when the EPA notified the Corps, by letter, of its intention to: (1) subject the permit to such review, and (2) issue a public notice of a proposed

determination to prohibit, deny, restrict, or withdraw the specification within 15 days of said letter.[1] *See EPA's October 16, 2009, Letter* (Doc. 465-1); *see also* 40 C.F.R. §§ 231.3(a)(1) & (a)(2). As is required by the regulations governing the EPA's § 404(c) review, *see* 40 C.F.R. § 231.3(a)(2), following EPA's October 16, 2009, Letter to the Corps, the EPA entered into discussions with Mingo Logan to determine whether the agency and the Company could agree on how to further reduce the adverse environmental impacts associated with the Spruce No. 1 Permit.[2] It is the Court's understanding that these discussions continued into March 2010 and, to allow the Company and the agency a full opportunity to determine whether they could come to a mutual agreement, the Court extended the then-existing stays of this litigation four times during the parties' § 404(c) consultation period.[3]

Ultimately, the discussions between Mingo Logan and the EPA proved unsuccessful and, on March 5, 2010, the United States moved to extend the then-existing stay for a three-week period,

---

[1]The EPA's October 16, 2009, Letter was the third in a series of letters between the EPA and the Corps, in which the agencies discussed whether to conduct further review of the Spruce No. 1 Permit. In the first letter, sent on September 3, 2009, the EPA requested the Corps re-evaluate the permit pursuant to its authority under 33 C.F.R. § 325.7 to suspend, revoke or modify a § 404(c) permit. *See EPA's September 3, 2009, Letter* (Doc. 459). In response to EPA's request, on September 30, 2009, the Corps sent a letter to EPA, declining to exercise its 33 C.F.R. § 325.7 authority and explaining that it had determined that "no additional evaluation of the [Spruce No. 1] project's effects on the environment [were] warranted." *See Corps' September 30, 2009, Letter* (Doc. 464-1), 4. Not convinced, the EPA sent the October 16, 2009, letter to the Corps, initiating the formal § 404(c) review of the permit.

[2]Under the regulations, the EPA is instructed to give a permittee 15 days to "demonstrat[e] to the satisfaction of the Regional Administrator that no unacceptable adverse effect(s) will occur[.]" 40 C.F.R. § 231.3(a)(2). If this has not been demonstrated, and if "the District Engineer or state does not notify the Regional Administrator of his intent to take corrective action to prevent an unacceptable adverse effect satisfactory to the Regional Administrator, the Regional Administrator shall publish notice of a proposed determination[.]" *Id.*

[3]Three of these four extensions were unopposed. *See* 467/468, 469/471, and 472/473.

"to allow [the EPA] to make a determination regarding whether to proceed to the next step in the pending administrative process to veto the permit, in light of EPA's continuing concerns about the environmental impacts associated with [the] permit." *See U.S.'s Mot. to Extend* (Doc. 474). In response to the United States' motion, Mingo Logan requested that, if the Court granted an extension, it condition the stay by: (1) requiring the Corps' respond to Mingo Logan's motion for summary judgment by March 26, 2010, or (2) informing the United States that no future extensions would be granted unless the EPA published a public notice of its proposed determination to prohibit or restrict the Spruce No. 1 Permit by March 26, 2010. *See Mingo Logan's Resp.* (Doc. 478). On March 18, 2010, the Court granted the United States' motion, over Mingo Logan's objection, and extended the stay until March 26, 2010. *See* Doc. 480. In doing so, the Court declined to condition the stay as requested by Mingo Logan.

On March 26, 2010, the United States filed the instant motion. Also on March 26, 2010, the EPA issued a "Proposed Determination to Prohibit, Restrict, or Deny the Specification, or the Use for Specification (including Withdrawal of Specification), of an Area as a Disposal Site; Spruce No. 1 Surface Mine." *See EPA's Proposed Determination* (Doc. 481-1). In the Proposed Determination, "EPA Region III acknowledges the [Spruce No. 1] project has undergone extensive regulatory review and has been modified from the original proposal in order to reduce impacts." *Id.* at 1. Nonetheless, the agency indicates that it "is [proceeding with the § 404(c) review] because it believes, despite all the regulatory processes intended to protect the environment, that construction of Spruce No. 1 Mine as authorized would destroy streams and habitat, cause significant degradation of on-site and downstream water quality, and could therefore result in unacceptable adverse impacts to wildlife and fisheries." *Id*.

The United States argues an extension of the stay of this action is appropriate: (1) to avoid interference with EPA's exercise of its statutory authority under § 404(c); (2) because EPA's § 404(c) process will have bearing on this litigation and, therefore, a stay will serve the interests of judicial economy and efficiency; and (3) because the stay will not affect Mingo Logan's ability to conduct limited mining operations under the Spruce No. 1 Permit, as agreed to in January 2007. As a result, the United States contends an extension will not prejudice Mingo Logan. The Company disagrees. Mingo Logan opposes the United States' motion, on the grounds that: (1) the United States' motion openly advances the EPA's interests and, because the EPA is not a party to this litigation, it is inappropriate for the Corps to advance that agency's interests herein; and (2) the stay will result in real, economic harm to Mingo Logan. Accordingly, Mingo Logan argues that the Government's motion should be denied because it has not satisfied the test for a stay established in *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

## Standard of Review

The Court's power to stay an action derives from its inherent power to control its own docket. *See, e.g., United States v. Georgia Pacific, Corp.*, 562 F.2d 294, 296 (4th Cir. 1977). This discretionary power is well-recognized, however, it is not without limitation. *Williford*, 715 F.2d at 127. The "proper use of this authority calls for an exercise of judgment which must weigh competing interests and maintain an even balance." *Id.* (internal quotations and citations omitted). "The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* (citing *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)). Thus, if harm to the party against whom a stay is operative is shown, "[t]he party seeking a stay must justify

it by clear and convincing circumstances outweighing potential harm against whom it is operative." *Id.*

## Analysis

The Court **FINDS** the Government's argument convincing and **GRANTS** the motion. As recognized by Mingo Logan, the EPA's "§ 404(c) proceeding could moot this case entirely." *See Mingo Logan's Resp. in Opp'n* (Doc. 483), 8. According to its Proposed Determination, EPA is determining whether to: (1) withdraw specification and prohibit any discharges under the Spruce No. 1 Permit, (2) restrict specification under the permit, or (3) decide the current permit is sufficiently protective and allow discharge to continue as permitted. *See* Doc. 481-1 at 2. If, after completion of its administrative review, EPA chooses to either withdraw or restrict the specification, then this case will be rendered moot because there will be no purpose in the Court determining the legal soundness of a permit which is no longer valid. The fact that the EPA's § 404(c) process has a likelihood of mooting Mingo Logan's motion for summary judgment, combined with the EPA's substantial authority under the CWA, and with the likelihood that irreparable harm would result if the Court were to grant summary judgment to Mingo Logan, warrants staying this action.[4]

---

[4]The Court is aware that Mingo Logan has filed a complaint in the United States District Court for the District of Columbia, challenging the EPA's administrative review of the Spruce No. 1 Permit under the Administrative Procedure Act's ("APA"). The APA mandates that a reviewing court "hold unlawful and set aside agency action ... not in accordance with law ... [or] in excess of statutory jurisdiction, authority, or limitations," *see* 5 U.S.C. § 706, and Mingo Logan claims that the EPA's § 404(c) review violates the APA because, by initiating its administrative review more than three years *after* the permit was issued, the agency acted outside of the scope of its statutory authority. Additionally, the Court is aware that the administrative review of the Spruce No. 1 Permit constitutes the first review, since the passage of the CWA in 1972, of a previously permitted project. *See EPA Press Release*, March 26, 2010, http://www.epa.gov/region03/mtntop/spruce1documents.html. The validity of the EPA's exercise of its § 404(c) authority, however, is not before this Court. As a result, for the purposes of this litigation, the Court assumes that the EPA has properly exercised its § 404(c) authority

To begin with, in light of the substantial overlap in statutory authority granted to the Corps and the EPA under the CWA, and specifically in the context of the agencies' shared responsibilities under § 404(c), *see* 33 U.S.C. § 1344(c), the Court **FINDS** that it is appropriate for the United States, through the Department of Justice, to raise the interests of both agencies in the instant litigation. First, such a finding is consistent with the overall policies and purpose of the CWA, which is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The above-quoted objective is clearly national in scope. As a result, it requires coordination of the various state and federal agencies responsible for the use and protection of water resources and, consequently, the statute establishes a "policy that to the maximum extent possible the procedures utilized for implementing this chapter shall encourage the drastic minimization of paperwork and interagency decision procedures, and the best use of available manpower and funds, so as to prevent needless duplication and unnecessary delays at all levels of government." 33 U.S.C. § 1251(f).

The administrative review process authorized under § 404(c) is a procedure established to implement the policy and goals of the CWA. *See* 33 U.S.C. § 1344(c) (authorizing the Administrator to prohibit, deny or restrict a discharge that "will have an unacceptable adverse effect on [the environment]"). Thus, according to the policy established in 33 U.S.C. § 1251(f), it is appropriate for the Corps and the EPA to act together in assuring the completion of the EPA's review of the Spruce No. 1 Permit pursuant to its § 404(c) authority. Second, although Mingo Logan is correct that the CWA contemplates that the Corps and the EPA may, at times, have conflicting interests or positions under the Act, *see* Doc. 483 at 3, allowing the United States to

---

and will rule, accordingly.

advance the interests of both the Corps and the EPA in this case, where those interests are now aligned, is consistent with the doctrine of the unitary executive. *See, e.g., United States v. Providence Journal Co.*, 485 U.S. 693, 706 (1988) ("[T]he United States usually should speak with one voice before [a federal court], and with a voice that reflects not the parochial interests of a particular agency, but the common interests of the Government and therefore of all the people.").

Because it is appropriate for the United States to advance the interests of the EPA in this action, the Court now determines whether the extension of the stay is warranted under *Williford*. *See generally* 715 F.2d 124. In *Williford*, the Fourth Circuit held that, if the party against whom a stay is operative shows it will be harmed by the stay, then, before it can obtain the requested relief, an applicant must make a out a clear case that he will suffer substantial hardship in the absence of the stay. *Id.* at 127.

Mingo Logan argues that it will be harmed by an extension of the stay in a number of ways. First and foremost, the Company argues that it will be harmed because, under an extended stay, it will remain subject to the 20-day notice requirement, established in January 2007, and this notice requirement will create a risk that Plaintiffs will file a motion for preliminary injunction in the case of such notice. Therefore, Mingo Logan contends that the 20-day notice harms it because "unless [it] subjects itself to the expense and delay associated with providing prior notice and a likely preliminary injunction hearing, it cannot use its issued permit to expand into new watersheds ... [and] [n]ot being able to use its three year old permit as planned constitutes harm to Mingo Logan." *See Mingo Logan's Resp. in Opp'n* (Doc. 483), 5. According to Mingo Logan, the inability to mine beyond the limits of the January 2007 agreement harm the Company, because it has invested significant financial resources in reliance on the Spruce No. 1 Permit and because, under the existing

9

stay, 90% of the reserves at Spruce No. 1 remain in the ground, without the Company knowing when it will be able to mine those reserves. *Id.* Additionally, Mingo Logan claims that it is further economically harmed by not being able to resolve this litigation, because it is required to use higher quality and higher priced metallurgical coal to fulfill existing contracts to supply steam coal, instead of being able to use the lower grade steam coal characteristic of the Spruce No. 1 reserves. *Id.* at 6; *see also Shanks' Affidavit* (Doc. 485-1).

In contrast to this real economic harm suffered by Mingo Logan as a result of the stay, the Company argues that, because the EPA is not a party to this suit, the United States cannot demonstrate the substantial hardship required to be afforded a stay under *Williford*. *Id.* at 6-8. The Court disagrees. As discussed above, the Court **FINDS** that it is appropriate for the United States, through the Corps and the Department of Justice, to advance the interests of the EPA in this litigation. As a result, an extension is necessary to: (1) preserve the integrity of the EPA's administrative review of the Spruce No. 1 Permit, and (2) protect the environment in the interim period. *See EPA's Proposed Determination* (Doc. 481-1), 1 ("[EPA] "is [proceeding with the § 404(c) review] because it believes, despite all the regulatory processes intended to protect the environment, that construction of Spruce No. 1 Mine as authorized would destroy streams and habitat, cause significant degradation of on-site and downstream water quality, and could therefore result in unacceptable adverse impacts to wildlife and fisheries."); *Amoco Production Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 545 (1987) ("Environmental injury, by its nature, can seldom be adequately remedied by monetary damages and is often permanent or at least of long duration, i.e, irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor

the issuance of an injunction to protect the environment.").[5]

Finally, the Court **FINDS** that the instant extension is not an abuse of discretion – as argued by Mingo Logan – because, despite Mingo Logan's assertion, the extension is not indefinite. To the contrary, the stay in this action is **ORDERED EXTENDED** for only so long as is required for the EPA to complete its administrative review under § 404(c), or for **6 months**, whichever is shorter. Accordingly, the Court **SCHEDULES** a status conference on **October 4, 2010,** at **11 a.m.** to address the status of the EPA's § 404(c) review.

---

[5] Although the Court is sympathetic to Mingo Logan's frustration over the delay in the resolution of this case, and to the economic harm caused to the Company as a result of the limits on mining operations at its Spruce No. 1 mine, this Court **FINDS** that, in light of the reasons explained above, such temporary economic harm is not a sufficient basis upon which to deny the requested stay. *See April 20, 2007, Mem. Op. & Order* (Doc. 295) ("This harm to the Intervenors is purely a temporary, economic harm, which ordinarily [will] not warrant a stay[.]") (citing *Long v. Robinson*, 432 F.2d 977, 980-81 (4th Cir. 1970) ("[M]ere injuries, however substantial, in terms of money, time and energy expended in the absence of a stay, are not enough.")).

11

**Conclusion**

After weighing the competing arguments and interests, the Court **FINDS** that an extension of the stay is warranted. Such an extension will serve the interests of the United States and the public, by allowing the EPA to properly and fully exercise its statutory authority to review the Spruce No. 1 Permit, meanwhile, preventing any unacceptable adverse environmental effects in the interim period. Moreover, because the § 404(c) review has the potential to moot this action entirely, the extension serves the interests of judicial economy and efficiency. The United States' motion is therefore **GRANTED** as described above.

In conformity with the previous stays, the extension shall not affect Mingo Logan's ability to conduct mining operations pursuant to the parties' earlier agreements. The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: April 22, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE