IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

|  |  |
|---|---|
| OHIO VALLEY ENVIRONMENTAL COALITION, et al., ) ) ) ) Plaintiffs, ) ) v. ) ) UNITED STATES ARMY CORPS OF ) ENGINEERS, et al., ) ) Defendants, ) ) ARACOMA COAL COMPANY, et al., ) ) Intervenor-Defendants. ) ) | Civil Action Nos. 3:05-cv-0784<br>3:06-cv-0438 |

**UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION TO EXTEND THE STAY OF PROCEEDINGS REGARDING THE MINGO LOGAN COAL COMPANY'S SPRUCE NO. 1 PERMIT FOR AN ADDITIONAL 120 DAYS (UNTIL FEBRUARY 22, 2011)**

The United States moves this Court to extend the stay of proceedings regarding the Mingo Logan Coal Company's ("Mingo Logan") Spruce No. 1 Permit for a period of 120 days, or until February 22, 2011, in order that the United States Environmental Protection Agency ("EPA") can complete the Clean Water Act ("CWA") § 404(c) administrative process. For reasons discussed more fully below, the relief requested is just and proper and the extension of the stay should be granted.[1]

---

[1] In its Status Report filed on October 4, 2010, and at the status conference held the same date, the United States advised the Court and the parties that the administrative proceedings would not be completed by October 22, 2010, the end of the current stay period, and advised that the United States would be seeking an extension of the stay.

1

## STANDARD OF REVIEW

The Court's power to stay an action derives from its inherent power to control its own docket. *See, e.g., United States v. Georgia Pacific Corp.*, 562 F.2d 294, 296 (4th Cir. 1977). This discretionary power is well recognized, but it is not without limitation. *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). The determination of a motion to stay "calls for an exercise of judgment which must weigh competing interests and maintain an even balance." *Id.* (internal quotations and citation omitted.). In other words, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Id.*

## FACTUAL BACKGROUND

Clean Water Act ("CWA") § 404(c) provides that EPA may prohibit the specification, including the withdrawal of specification, of an area identified as a disposal site by the U.S. Army Corps of Engineers ("Corps") for the discharge of dredged or fill material. In effect, the statute gives EPA the authority to veto a permit issued by the Corps of Engineers, after proper consultation and notice and comment. However, the statute and applicable regulations require that EPA's determination be made only after notice and opportunity for public comment and, where appropriate, a public hearing, and following consultation with the Secretary of the Army, acting through the Corps' Chief of Engineers, and the project proponent. 33 U.S.C. § 1344(c); 40 C.F.R. pt. 231. The determination must be made in writing with a statement of the EPA Administrator's findings and the reasons for the determination. 33 U.S.C. § 1344(c).

EPA initiated this administrative process on October 16, 2009, when the Regional Administrator for EPA Region III notified the District Engineer for the Corps and Mingo Logan,

pursuant to 40 C.F.R. § 231.3(a)(1), of his intent to issue a public notice of a proposed determination to restrict or prohibit the discharge of dredged or fill material as currently authorized by DA Permit No. 199800436-3 (the Spruce No. 1 Permit). In accordance with EPA regulations, 40 C.F.R. § 231.3(a)(2), that letter commenced the initial 15-day period for the recipients of the letter to demonstrate that no unacceptable adverse effects will occur, or that corrective action will be taken to prevent unacceptable adverse effects. Notwithstanding several extensions of the consultation period, it was not demonstrated to EPA's satisfaction that no unacceptable adverse effects would occur.

On March 26, 2010, the Regional Administrator for EPA Region III signed a Proposed Determination, proposing to withdraw or restrict specification of certain waters as disposal sites for the discharge of dredged or fill material in connection with the construction of the Spruce No. 1 Mine as currently authorized by DA Permit No. 1980043 (the Spruce No. 1 Permit). EPA's proposal was based on its determination that the discharge could result in unacceptable adverse effects to wildlife and that the discharge could cause or contribute to significant degradation of waters of the United States, inconsistent with the CWA Section 404(b)(1) Guidelines. EPA published the Proposed Determination on April 2, 2010 in the Federal Register and invited comments. 75 Fed. Reg. 16,788 (April 2, 2010).

The public notice solicited comments on various alternatives, including: (1) the withdrawal of the specification of the site as a disposal site and prohibition of any discharges from the project, including the construction of valley fills; (2) the restriction of the specification of the site as a disposal site and determination that the project cannot go forward under the permit as currently issued, but could go forward under a modified permit with more

3

environmentally protective conditions; or (3) a determination that the permit as currently issued is sufficiently protective and withdrawal of the proposed determination. EPA accepted comments for a period of 60 days following publication of the proposed determination in the Federal Register. EPA also held a public hearing on May 18, 2010 to receive comments. EPA Region III received approximately 50,750 comments during the comment period, both in support of and in opposition to the proposed determination. All of the public comments received are available in the public record at www.regulations.gov, Dkt. No. EPA-R03-OW-2009-0985.

On September 24, 2010, the Regional Administrator for EPA Region III forwarded his recommended determination to EPA Headquarters for consideration by the EPA Assistant Administrator for Water. The recommended determination concludes, in relevant part:

> Region III has determined that discharges of dredged and/or fill material to Pigeonroost Branch and Oldhouse Branch for the purpose of constructing the Spruce No. 1 Surface Mine as currently authorized by DA Permit No. 199800436-3 (Section 10: Coal River) would likely have unacceptable adverse effects on wildlife.
> * * *
> Accordingly, pursuant to Section 404(c) of the Clean Water Act and its implementing regulations at 40 C.F.R. Part 231, and for the reasons set forth herein, it is my recommendation that the specification embodied in DA Permit No. 199800436-3 (Section 10: Coal River) of Pigeonroost Branch and Oldhouse Branch as disposal sites for discharges of dredged and/or fill material for construction of the Spruce No. 1 Surface Mine be withdrawn.

Exhibit 1 at 81, 83.

The recommended determination was received by EPA Headquarters on September 28, 2010. EPA's regulations provide that within 60 days of receipt of the recommended determination, the Assistant Administrator for Water must issue a Final Determination affirming, modifying, or rescinding the recommended determination. 40 C.F.R. § 231.6. However, that

4

period may be extended by EPA for cause. 40 C.F.R. § 231.8. As reported in EPA's Status Report filed on October 4, 2010, EPA has in past CWA § 404(c) proceedings extended that period for an additional 60-days. Because of the voluminous record compiled in this proceeding, EPA anticipates that it will exercise the authority of § 231.8 and extend the period for issuance of the Final Determination for an additional 60 or 90 days.

EPA's regulations also provide that the EPA Assistant Administrator for Water must consult with the Chief of Engineers and the project proponent prior to making a Final Determination. The period of consultation is to be initiated within 30 days following receipt of the recommended determination. 40 C.F.R. § 231.6. The project proponent and the Chief of Engineers then have a period of 15 days to notify EPA if they intend to take "corrective action." Id. The period for initiation of consultation, and the period for the Chief of Engineers or the project proponent to respond to EPA, and the period for taking corrective action, may all be extended by EPA for cause. 40 C.F.R. § 231.8. Accordingly, if the period of consultation or for taking corrective action is extended, the date for issuance of the Final Determination may be extended.

EPA's administrative process is nearing the end. EPA anticipates that, absent a notice from the Corps or Mingo Logan of intent to take corrective action, EPA will issue its Final Determination by February 22, 2011.

## ARGUMENT

### I. The Stay of Proceedings is Appropriate to Avoid Interference with EPA's Exercise of its Statutory Authority.

The requested extension of the stay of the judicial proceedings is necessary to avoid interference with EPA's exercise of its CWA § 404(c) authority. EPA's right to exercise that

5

authority may be severely prejudiced if the Court were to rule on the Mingo Logan motion for summary judgment before EPA has issued its Final Determination. If the Mingo Logan motion for summary judgment were granted by the Court, the mining operation at issue could go forward, and any determination by EPA to prohibit, restrict or condition the operation could be rendered moot. Moreover, it is probable that by the time EPA completes the administrative process it has initiated, some or all of the damage identified in EPA's proposed determination would be done and the harm would be irreparable. As this Court recognized in granting the United States' most recent motion for an extension of the stay of judicial proceedings, "an extension [of the stay] is necessary to: (1) preserve the integrity of the EPA's administrative review of the Spruce No. 1 Permit, and (2) protect the environment in the interim period." Memorandum Opinion and Order dated April 22, 2010 (Dkt. No. 486) at 10. Accordingly, a 120 day extension of the stay is warranted to protect the integrity of the administrative process and to protect the environment during the completion of that process.

II. **The Judicial Process Should be Stayed Pending Completion of the Administrative Process Because the Outcome of the Administrative Process Will Have a Bearing on the Litigation.**

A stay of these proceedings would serve the interests of judicial efficiency because EPA's administrative process may result in prohibition of the discharge authorized by the Spruce No. 1 Permit now pending before this Court, or revisions to that permit. As this Court has previously recognized:

> Many of the flaws EPA identifies relate to issues raised by Plaintiffs in this litigation; addressed by the Fourth Circuit in *Ohio Valley Environmental Coalition v. Aracoma Coal Co.*, 556 F.3d 177 (4th Cir. 2009); and argued by Mingo Logan in support of its motion for summary judgment. *See* Doc. 445, Memo in Support of Mingo Logan's Mot. For Summary Judgment. Thus, it is

6

>reasonable to assume that EPA's § 404(c) process, including its consultations with the Corps and Mingo Logan, will have bearing on the instant litigation.

Memorandum Opinion and Order dated October 21, 2009 (Doc. No. 466). Therefore, this Court concluded that the United States' prior request to extend the stay was reasonable. The Court's observation is even more true in the current circumstances, as EPA Region III has now issued a recommended determination, recommending that the specification for disposal sites as currently embodied in the Spruce No. 1 Permit, be withdrawn -- effectively resulting in a veto of the Spruce No. 1 Permit. If the Final Determination adopts the recommended determination, the Spruce No. 1 Permit will be vetoed, thereby rendering moot any further consideration of the Permit now before the Court. As this Court held in granting the United States' last motion for stay:

>If, after completion of its administrative review, EPA chooses to either withdraw or restrict the specification, then this case will be rendered moot because there will be no purpose in the Court determining the legal soundness of a permit which is no longer valid. The fact that the EPA's § 404(c) process has a likelihood of mooting Mingo Logan's motion for summary judgment, combined with the EPA's substantial authority under the CWA, and with the likelihood that irreparable harm would result if the Court were to grant summary judgment to Mingo Logan, warrants staying this action.

Memorandum Opinion and Order dated April 22, 2010 (Dkt. No. 486) at 7. The same reasoning supports the current request for an extension of the stay for an additional 120 days.

### III. Intervenor Will Not Be Prejudiced by the Stay Requested.

A stay of these proceedings would not prejudice Intervenor Mingo Logan or Plaintiffs. The stay would have no immediate affect on Mingo Logan's current operations as authorized by

7

its agreement to restrict the scope of it mining operations. To the extent Mingo Logan requires further relief during the period of the stay, it may move this Court to lift the stay for the purpose of requesting further relief. Similarly, a stay of proceedings will not prejudice Plaintiffs because if Mingo Logan should provide notice of its intent to expand the scope of its mining activities beyond those authorized in the agreement between Mingo Logan and Plaintiffs, Plaintiffs may move this Court to lift the stay for the purpose of seeking further relief from the Court.

The stay will merely defer the United States' and Plaintiffs' responses to, and this Court's disposition of, the Mingo Logan motion for summary judgment, and thereby defer until a later time a final determination on the validity of the Spruce No. 1 Permit. This relief is necessary and appropriate to maintain the *status quo* and allow the completion of the administrative process initiated by EPA.

## CONCLUSION

For the foregoing reasons, the United States requests that the stay of proceedings related to the Spruce No.1 Permit be continued until February 22, 2011, or until EPA completes its administrative process, whichever is sooner.

DATED: October 15, 2010                Respectfully submitted,

IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

/s/Cynthia J. Morris
CYNTHIA J. MORRIS, Trial Attorney
U.S. Department of Justice
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986

8

Tel: (202) 616-7554

RUTH ANN STOREY, Trial Attorney
U.S. Department of Justice
Natural Resources Section
P.O. Box 663
Washington, D.C. 20044-0663
Tel: (202) 305-0493

OF COUNSEL:

DEBRA TABOR
U.S. Army Corps of Engineers
Huntington, WV

RUSSELL W. PETIT
U.S. Army Corps of Engineers
Washington, D.C.

ANN D. NAVARO
Special Attorney, U.S. Department of Justice
U.S. Army Corps of Engineers
550 Main Street, Room 10032
Cincinnati, Ohio 45202
Tel: (513) 684-3083

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

| | |
|---|---|
| OHIO VALLEY ENVIRONMENTAL COALITION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ARMY CORPS OF ENGINEERS, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action Nos. 3:05-cv-0784 <br> 3:06-cv-0438 <br><br> **CERTIFICATE OF SERVICE** |

I hereby certify that on this 15th day of October, 2010, I electronically filed the foregoing "Memorandum in Support of Motion to Extend the Stay of Proceedings Regarding Mingo Logan Coal Company's Spruce No. 1 Permit For An Additional 120 Days" with the Clerk of the Court using the CM/EMF system which will send notification to the following:

Joseph M. Lovett
Derek O. Teaney
Appalachian Center for the Economy and
the Environment
P.O. Box 507
Lewisburg, West Virginia 24901
(304) 645-9006

James M. Hecker
Trial Lawyers for Public Justice
1825 K Street, N.W. Suite 200
Washington, D.C. 20006
*Counsel for Plaintiffs*

James S. Crockett
Allyn G. Turner
Andrew B. McCallister
Spilman Thomas & Battle, PLLC
P.O. Box 273
Charleston, WV 25321-0273
Robert G. McClusky
James R. Snyder
Jackson & Kelly PLLC

1600 Laidley Tower
P.O. Box 553
Charleston, WV 25322

Terry R. Sammons
Sammons Law Offices, PLLC
P.O. Box 1747
Gilbert, WV 25621

W. Howard Sammons, II
Law Office of W. Howard Sammons II
2768 Pennsylvania Ave.
Charleston, WV 25302


/s/ Cynthia J. Morris

10