IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, et al.,

        Plaintiffs,

v.                                      CIVIL  ACTION  NOs.  3:05-0784
                                                               3:06-0438

UNITED STATES ARMY CORPS
OF ENGINEERS, et al.,

        Defendants.

v.

INDEPENDENCE COAL COMPANY, et. al.,

        Intervenor-Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the U.S. Army Corps of Engineers' ("the Corps") Motion to Extend the Stay of Proceedings Regarding the Mingo Logan Coal Company's Spruce No. 1 Permit For an Additional 120 Days (Until February 22, 2011) (Doc. 497). For the reasons set forth below, the motion is **GRANTED.**

Background

This action pertains to the validity of the Corps' issuance of individual Clean Water Act ("CWA") Permit No. 199800436-3 to Mingo Logan, for the discharge of fill material into waters of the United States in association with the Spruce No. 1 mine located in Logan County, West Virginia ("Spruce No. 1 Permit"). *See Corps' Sept. 30, 2009, Letter* (Doc. 463-1). The Spruce No. 1 Permit was issued, on January 22, 2007, after nearly a decade of Corps coordination with the coal

company and the U.S. Environmental Protection Agency ("EPA"). *Id.* Almost immediately following issuance, on January 30, 2007, Plaintiffs filed the instant lawsuit, challenging the issuance of the Spruce No. 1 Permit and seeking to enjoin operations under it. *See Pls.' Mot. for Leave to File Fourth Suppl. Compl.* (Doc. 250); *Pls.' Mot. for TRO* (Doc. 252). "To avoid the expense and delay associated with a hearing on a preliminary injunction request, in January 2007, Mingo Logan agreed with [Plaintiffs] to temporarily to limit its activities." *Mingo Logan's Resp. in Opp'n*, (Doc. 483) 4, n.3 (internal brackets and quotations omitted). The parties' agreement was acknowledged, by Order of this Court, on February 1, 2007. *See* Doc. 257. According to the compromise, in exchange for Plaintiffs' agreement to withdraw their motion for a temporary restraining order, Mingo Logan consented to: (1) limit its mining activities to a specified area, and (2) provide Plaintiffs 20 days notice before expanding mining operations outside this specified area. *Id.* Mingo Logan has been operating under the Spruce No. 1 Permit, in the manner specified in the January 2007 agreement, since that time.

On July 16, 2009, Mingo Logan filed a motion for summary judgment in this case. *See* Doc. 444. The motion relies, in large part, upon the Fourth Circuit's decision in *Ohio Valley Environmental Coalition, Inc. v. Aracoma Coal Co.*, 556 F.3d 177 (4th Cir. 2009), where, on February 17, 2009, the circuit court overturned a decision by this Court. In *Aracoma*, the Fourth Circuit found that the Corps was entitled to substantial deference when issuing permits pursuant to § 404 of the CWA and upheld four permits previously struck down by this Court. *Id.* Since the filing of Mingo Logan's motion for summary judgment, on July 16, 2009, the United States has sought and received ten stays or extensions of time to respond to Mingo Logan's motion. *See U.S.'s Mots. & Corresponding Orders* (Docs. 448/449, 454/456, 457/458, 459/461, 463/466, 467/468,

469/471, 472/473, 474/480, and 481/486). The most recent stay was granted on April 22, 2010, in consideration of the ongoing administrative review of the Spruce No. 1 permit by the EPA pursuant to § 404(c) of the CWA. This stay was set to expire on October 22, 2010; however, the Court granted an indefinite extension pending the submission of briefing by both parties on an additional grant of stay. Doc. 495. This briefing has now been submitted by both parties, and is ripe for adjudication. Docs. 497, 498, 499. Plaintiffs do not oppose the United States' motion, however, Mingo Logan has filed a response in opposition. *See* Doc. 499.

Pursuant to § 404(c) of the CWA, the EPA "is authorized to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever [the Administrator] determines . . . that the discharge of such materials into such area will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas . . . wildlife, or recreational areas." 33 U.S.C. § 1344(c). The EPA's § 404(c) review of the Spruce No. 1 Permit was formally initiated, on October 16, 2009, when the EPA notified the Corps, by letter, of its intention to: (1) subject the permit to such review, and (2) issue a public notice of a proposed determination to prohibit, deny, restrict, or withdraw the specification within 15 days of said letter.[1] *See EPA's Oct. 16, 2009, Letter* (Doc. 465-1); *see also* 40 C.F.R. §§ 231.3(a)(1) & (a)(2). As is

---

[1] The EPA's October 16, 2009, Letter was the third in a series of letters between the EPA and the Corps, in which the agencies discussed whether to conduct further review of the Spruce No. 1 Permit. In the first letter, sent on September 3, 2009, the EPA requested the Corps re-evaluate the permit pursuant to its authority under 33 C.F.R. § 325.7 to suspend, revoke or modify a § 404(c) permit. *See EPA's Sept. 3, 2009, Letter* (Doc. 459). In response to EPA's request, on September 30, 2009, the Corps sent a letter to EPA, declining to exercise its 33 C.F.R. § 325.7 authority and explaining that it had determined that "no additional evaluation of the [Spruce No. 1] project's effects on the environment [were] warranted." *See Corps' Sept. 30, 2009, Letter* (Doc. 463-1), 4. Not convinced, the EPA sent the October 16, 2009, letter to the Corps, initiating the formal § 404(c) review of the permit.

required by the regulations governing the EPA's § 404(c) review, *see* 40 C.F.R. § 231.3(a)(2), following EPA's October 16, 2009, Letter to the Corps, the EPA entered into discussions with Mingo Logan to determine whether the agency and the Company could agree on how to further reduce the adverse environmental impacts associated with the Spruce No. 1 Permit.[2]

Ultimately, the discussions between Mingo Logan and the EPA proved unsuccessful and, on March 26, 2010, the EPA issued a "Proposed Determination to Prohibit, Restrict, or Deny the Specification, or the Use for Specification (including Withdrawal of Specification), of an Area as a Disposal Site; Spruce No. 1 Surface Mine." *See EPA's Proposed Determination* (Doc. 481-1). In the Proposed Determination, "EPA Region III acknowledge[d] [that] the [Spruce No. 1] project has undergone extensive regulatory review and has been modified from the original proposal in order to reduce impacts." *Id.* at 1. Nonetheless, the agency indicated that it was proceeding with the § 404(c) review "because it believe[d], despite all the regulatory processes intended to protect the environment, that construction of Spruce No. 1 Mine as authorized would destroy streams and habitat, cause significant degradation of on-site and downstream water quality, and could therefore result in unacceptable adverse impacts to wildlife and fisheries." *Id*. The United States also sought an extension of the stay in this action. The Court granted the United States' motion to stay for the duration of the administrative proceedings, or six months, whichever was shorter. Doc. 486. This

---

[2] Under the regulations, the EPA is instructed to give a permittee 15 days to "demonstrat[e] to the satisfaction of the Regional Administrator that no unacceptable adverse effect(s) will occur[.]" 40 C.F.R. § 231.3(a)(2). If this has not been demonstrated, and if "the District Engineer or state does not notify the Regional Administrator of his intent to take corrective action to prevent an unacceptable adverse effect satisfactory to the Regional Administrator, the Regional Administrator shall publish notice of a proposed determination[.]" *Id.*

stay was set to expire on October 22, 2010, but was extended by the Court pending the submission of the current briefing now before the Court. Doc. 495.

Since the stay was granted on April 22, 2010, the EPA has progressed in its administrative process. The proposed determination was open to public comments for sixty days, and a public hearing was held on May 18, 2010. *See U.S.'s Mot. To Extend the Stay* (Doc. 497) ¶ 7. The EPA received more than 50,000 comments, which were considered in the preparation of the EPA's recommended determination. *EPA's Recommended Determination* (Doc. 497-1) 7. The Regional Administrator for EPA Region III issued his recommended determination on September 24, 2010, in which he concluded that the permit as currently authorized "would likely have unacceptable adverse effects on wildlife." *Id.* Therefore, the Regional Administrator recommends that the permit as it applies to "Pigeonroost Branch and Oldhouse Branch as disposal sites for discharges of dredged and/or fill material for construction of the Spruce No. 1 Surface Mine be withdrawn." *Id.* This is now before the EPA Assistant Administrator for Water. *Id.* Under the regulations guiding this administrative process, the EPA Assistant Administrator for Water is now required to consult with the Chief of Engineers and the project proponent, and, where applicable, the State. 40 C.F.R. § 231.6. Further, these parties have "15 days to notify the Administrator of their intent to take corrective action to prevent an unacceptable adverse effect." *Id.* Both these processes are now underway. *See EPA's Oct. 15, 2010 & Oct. 27, 2010 Letters* (Docs. 500-1 & 500-3). The United States anticipates that the EPA will be prepared to issue its final determination by February 22, 2011, and, therefore, seeks an additional stay of 120 days. *U.S.'s Mot. to Extend the Stay* (Doc. 497).

The United States argues an extension of the stay of this action is appropriate: (1) to avoid interference with EPA's exercise of its statutory authority under § 404(c); (2) because EPA's § 404(c) process will have bearing on this litigation and, therefore, a stay will serve the interests of judicial economy and efficiency; and (3) because the stay will not affect Mingo Logan's ability to conduct limited mining operations under the Spruce No. 1 Permit, as agreed to in January 2007. As a result, the United States contends an extension will not prejudice Mingo Logan. The Company disagrees. Mingo Logan incorporates its previous arguments against the United States' motion, (*see* Docs. 485 & 483), on the grounds that: (1) the United States' motion openly advances the EPA's interests and, because the EPA is not a party to this litigation, it is inappropriate for the Corps to advance that agency's interests herein; and (2) the stay will result in real, economic harm to Mingo Logan. Accordingly, Mingo Logan argues that the Government's motion should be denied because it has not satisfied the test for a stay established in *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

**Standard of Review**

The Court's power to stay an action derives from its inherent power to control its own docket. *See, e.g., United States v. Georgia Pacific, Corp.*, 562 F.2d 294, 296 (4th Cir. 1977). This discretionary power is well-recognized, however, it is not without limitation. *Williford*, 715 F.2d at 127. The "proper use of this authority calls for an exercise of judgment which must weigh competing interests and maintain an even balance." *Id.* (internal quotations and citations omitted). "The supplicant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* (citing *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)). Thus, if

harm to the party against whom a stay is operative is shown, "[t]he party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm against whom it is operative." *Id.*

## Analysis

The previous stay was granted in order to provide the EPA with the opportunity to utilize its § 404(c) authority, and follow the administrative process to its conclusion. *Mem. Op. & Order of the Ct.* (Doc. 486). In granting the motion to stay, this Court found that "the fact that the EPA's § 404(c) process has a likelihood of mooting Mingo Logan's motion for summary judgment, combined with the EPA's substantial authority under the CWA, and with the likelihood that irreparable harm would result if the Court were to grant summary judgment to Mingo Logan, warrants staying this action." *Id.* at 7. The Court **FINDS** this reasoning equally applies to the motion currently before the Court.

The EPA utilized the past six months to move forward in its administrative review of the Spruce No. 1 Permit. The agency has now issued its recommended determination, and the final steps remaining in the administrative process are a consultation between the agency, the Chief of Engineers, and the project proponent; an opportunity for the project proponent to take corrective action; and the issuance of the agency's final determination. Therefore, the Government's argument that a stay should be granted to allow the EPA the opportunity to exercise the discretion it is vested with is all the more compelling. The extension requested is not unreasonable, and, if the EPA adopts its recommended determination as its final determination, this administrative review process will certainly moot this action. Further, Mingo Logan Coal has advanced no argument outside of those advanced in its briefing objecting to the extension of stay ultimately granted in the Court's April 22,

2010 Memorandum Opinion and Order. *See Mingo Logan's Resp. in Opp'n* (Doc. 499). This Court addressed these arguments in that Order, and **FINDS** that reasoning to apply here. *See Mem. Op. & Order of the Ct.* (Doc. 486) 8–11. Therefore, the stay is **ORDERED EXTENDED** for **120 days**, or until **February 22, 2011**.

### Conclusion

For the foregoing reasons, this Court **FINDS** that an extension of stay is warranted. Such an extension will serve the interests of the United States and the public, by allowing the EPA to properly and fully exercise its statutory authority to review the Spruce No. 1 Permit, meanwhile, preventing any unacceptable adverse environmental effects in the interim period. Moreover, because the § 404(c) review has the potential to moot this action entirely, the extension serves the interests of judicial economy and efficiency. The United States' motion is therefore **GRANTED** as described above.

In conformity with the previous stays, the extension shall not affect Mingo Logan's ability to conduct mining operations pursuant to the parties' earlier agreements. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: November 2, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE